# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### December 7, 2011 Session

## JULIE LEAMON TOMLIN v. NATHAN LEAMON

### Appeal from the Circuit Court for McMinn County
### No. 25075     Lawrence Howard Puckett, Judge

---

### No. E2011-01398-COA-R3-CV-FILED-FEBRUARY 23, 2012

---

This case arises from a dispute over which parent should be the primary residential parent of two minor children, Julian and Tristen ("the Children," collectively). Julie Leamon Tomlin ("Mother") and Nathan Leamon ("Father") are the parents of the Children. Mother and Father divorced several years ago and both have since remarried. Some time after the divorce, Mother, with whom the Children spent the majority of their time, filed a petition for correct child support and to modify the existing permanent parenting plan in the Circuit Court for McMinn County ("the Trial Court"). Father filed an answer and counterclaim, requesting that he be made the primary residential parent, or, in the alternative, that he have equal parenting time with the Children. Following trial, the Trial Court found that a material change of circumstances had occurred and that it was in the Children's best interests that Father be made primary residential parent of the Children. Mother appeals, arguing, in part, that no material change of circumstances had occurred that could support making Father the primary residential parent. We reverse the judgment of the Trial Court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., and JOHN W. MCCLARTY, JJ., joined.

Wanda G. Sobieski, Diane M. Messer, and Maia A. Niemann, Knoxville, Tennessee, for the appellant, Julie Leamon Tomlin.

Barrett T. Painter, Cleveland, Tennessee, for the appellee, Nathan Leamon.

# OPINION

## Background

Mother and Father divorced in 2004, and a Permanent Parenting Plan ("2004 PPP") was adopted at that time. In 2008, Mother filed her Petition to Establish Correct Child Support and for Modification of Permanent Parenting Plan. Father filed his answer and counterclaim in 2009, requesting that he be made the primary residential parent of the Children, or, in the alternative, that he receive equal parenting time with the Children. The trial was held in May 2010.

Mother, then 32 years old, testified first. Mother was enrolled at Miller-Motte Technical Institute for massage therapy. Mother lived with her parents at the time of this testimony. Since her divorce from Father, Mother had married Zachary Tomlin. Mother also had a child from a previous relationship who lived with his father. Mother had not held a job since 2007 because she was "medically unable and restricted from working," as she put it.

Mother testified that Tristen, then age 12, was in the sixth grade. Julian, then age 11, was in the fifth grade. Both of the Children attended Fairview Christian Academy, a private Christian school in Athens, Tennessee. Mother's parents paid the cost of the Children's schooling. Mother stated that the Children generally received A's and B's and had perfect attendance at school. The Children spent the majority of the time with Mother under the 2004 PPP.

Mother was arrested for public intoxication in 2008. According to Mother, she was attending a ball game involving the Children, and she believed that the Children were not being allowed to participate as much as they should have been. Mother testified that she was taking a number of medications at the time. Mother stated that she was "getting on the umpire" and was a "little upset." Consequently, a police officer arrested Mother. The charge was dismissed.

Matthew Norfleet ("Norfleet"), a police officer, testified about Mother's ball game incident. Norfleet arrested Mother for public intoxication. Norfleet testified that he observed Mother stumble and that she was very loud. Norfleet acknowledged that his memory of the incident was rather limited and that he could not recall much detail.

Next, the Children were asked about their preferences with respect to how they would like their time divided between the parents. Tristen testified first. As to whether he wanted to spend a majority of time with Father or Mother, Tristen stated: "I don't know yet." Tristen stated that he would like to spend equal time with his parents, provided Father

worked a different shift. Tristen testified that sometimes he spent time with his stepmother when Father worked the late shift. Tristen stated that he did not want to see any changes "for now." Tristen testified that he saw Mother quite a bit more than Father under the then existing arrangement. Tristen stated that if Father got a better shift, he would like to spend a "tiny bit" more time with him than with Mother.

Julian then testified as to his preference. Regarding his view on the time spent with his parents, Julian testified: "I like it how it is for right now." Julian stated "[n]ot really" in response to a question abut whether his preference would change if Father were available in the evening.

Father testified last. Father was 33 years old and married to Dusty Leamon. Father stated that he had worked at Mayfield Dairy for nearly 10 years. Father worked as second shift lead man at the time of trial, which ran from 5:00 p.m. to 1:30 a.m. Father stated that he earned 21 dollars per hour and earned about $42,000 the previous year. Father paid $46 per week in child support. Father soon was to begin working third shift, from midnight to 8:30 a.m., at reduced pay.

Father testified that he engaged in a number of activities with the Children, such as going fishing. When asked why he wanted to be designated primary residential parent of the Children, Father stated:

> I would - - it just always comes down to some silly argument about the first choice when it comes to the boys. If something comes up and I have to go to work on a weekend that I'm not supposed to work and I have the boys, Julie automatically wants me to bring them to her; but on any case when they were with her, there were many times that - - that she was not present with them at her mother's house; and I never got the option of first choice. So the fairness just seems to always go to her side. I never - - you know, I never really have contact with the boys when they're over there. If I ever call, you know, sometimes they answer the phone, sometimes they don't.

At the conclusion of the hearing, the Trial Court stated that it would leave the proof open until a later hearing date. The Trial Court believed that Father's shift to a new work schedule and Mother's potentially moving out of her parents' home could constitute a material change of circumstances.

In January 2011, a second hearing was held in this matter. Tristen, by then age 13, testified that he was in the seventh grade at Fairview Christian Academy. Tristen stated: "I want to spend the week with my dad, all day and all night, and then I want to spend every

other weekend with my mother."  Tristen also stated that Father told him he might be switching schools.

Julian also testified.  Julian, then age 12, stated, regarding his preference for parental visitation: "Like, I would still like it - - like still go with my dad on Monday and Wednesday and go to my mom on Tuesday and Thursday; but I would like to spend the night at my dad's on Monday, Tuesday, Wednesday and Thursday."

Mother testified.  Mother stated that she and her husband had moved into a house together since the first hearing.  Mother testified that she moved out of her parents' home because she no longer needed to live there to care for her now deceased grandmother.  Mother still was unemployed.  Mother's husband worked in the construction business, and she relied on his income.  Mother was due to graduate in massage therapy by July of that year.  Mother testified that the Children made straight A's and B's at school.  Mother stated that the Children were well-adjusted.  The Trial Court asked Mother a series of questions:

> Q.     Well, let's see, do you get along all right with the father, the two of you?
>
> A.     Yes.
>
> Q.     Have these children displayed any desire to spend more time with the father than what they are allowed to right now?
>
> A.     They used to before when he wasn't being able to spend his - - you know, because he was working.  But now they seem content because, you know, he can pick them up on Monday afternoons after school and then Wednesday afternoons after school and then he gets his Friday to Monday morning every other weekend now.  You know, he's there now instead of being gone like he was, you know, during the days and everything.  He's there, well, you know, except for the exception I guess he leaves about 9:30, ten o'clock, you know.  He's gone during the night.
>
> Q.     So his shift change is going to make him more available to the children?
>
> A.     Uh-huh.  Yeah, during the evening times, yeah, it makes him a little - - like on that Monday and Wednesday it makes him more available, especially on the Fridays and Saturdays.

Father testified. Father stated that he had changed shifts at work since the first hearing. Father now worked third shift, from midnight until 8:30 a.m. Father acknowledged that since the first hearing, he had been arrested for felony evading arrest. Father pled guilty to misdemeanor evading arrest in connection with the incident. Father also testified that he was buying his present home from his grandfather. Father stated that he received a loan from his grandfather to remodel the home.

After the trial, the Trial Court entered an order adopting Father's proposed permanent parenting plan whereby Father was designated the primary residential parent. In its incorporated transcript, the Trial Court stated, in part:

> Well, these are difficult cases always. There's no doubt there's been a material change of circumstance insofar as the parties, his work schedule changing and her living circumstances changing, to a degree that the children feel like there's opportunity and time to spend more time with the father that they would like to take advantage of. They're aware of those changes and have testified about their desire to spend more time with the father during the week. And I have to go through these statutes and make findings so that's what I will do.

The Trial Court proceeded to apply factors from Tenn. Code Ann. § 36-6-106 and Tenn. Code Ann. § 36-6-404 to the facts of the case. In conducting its analysis, the Trial Court emphasized, *inter alia*, Father's new work schedule and the benefit of the Children spending more time with Father. Mother appeals to this Court.

## Discussion

We restate the issues raised on appeal as one central issue: whether the Trial Court erred in changing the primary residential parent. Additionally, both parties request their attorney's fees.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address whether the Trial Court erred in changing the primary residential parent. Existing custody arrangements are favored because children thrive in

stable environments. *Hoalcraft v. Smithson*, 19 S.W.3d 822, 828 (Tenn. Ct. App. 1999). A custody decision, once made and implemented, is considered res judicata upon the facts in existence or those which were reasonably foreseeable when the decision was made. *Steen v. Steen*, 61 S.W.3d 324, 327 (Tenn. Ct. App. 2001). However, our Supreme Court has held that a trial court may modify an award of child custody "when both a material change of circumstances has occurred and a change of custody is in the child's best interests." *Kendrick v. Shoemake*, 90 S.W.3d 566, 568 (Tenn. 2002). According to the *Kendrick* Court:

> As explained in *Blair [v. Badenhope*, 77 S.W.3d 137 (Tenn. 2002) ], the "threshold issue" is whether a material change in circumstances has occurred after the initial custody determination. *Id*. at 150. While "[t]here are no hard and fast rules for determining when a child's circumstances have changed sufficiently to warrant a change of his or her custody," the following factors have formed a sound basis for determining whether a material change in circumstances has occurred: the change "has occurred after the entry of the order sought to be modified," the change "is not one that was known or reasonably anticipated when the order was entered," and the change "is one that affects the child's well-being in a meaningful way." *Id*. (citations omitted).

*Kendrick*, 90 S.W.3d at 570. *See also* Tenn. Code Ann. § 36–6–101(a)(2)(B) (2010).

The *Kendrick* Court went on to explain that if a material change in circumstances has been proven, "it must then be determined whether the modification is in the child's best interests ... according to the factors enumerated in Tennessee Code Annotated section 36–6–106." *Kendrick*, 90 S.W.3d at 570 (footnotes omitted). It necessarily follows that if no material change in circumstances has been proven, the trial court "is not required to make a best interests determination and must deny the request for a change of custody." *Caudill v. Foley*, 21 S.W.3d 203, 213 (Tenn. Ct. App. 1999).

Initially, Mother argues that the Trial Court erred in holding open the proof in this case between the trial in May 2010 and its resumption in January 2011. Mother argues that the gap in time worked to advantage only Father, and thus re-opening the proof constituted an abuse of discretion by the Trial Court.

We do not agree that the Trial Court erred in this respect. Indeed, Mother acknowledges that the Trial Court had the discretion to extend the process. The extension of time was not inherently prejudicial to Mother. One could just as well argue that Mother's case could have improved in the interim period. At any rate, the Trial Court's reasonable decision to extend this matter to a second hearing date was not an abuse of discretion. We

find no reversible error in the Trial Court's decision to postpone its ruling until the second hearing date.

Husband argues on appeal that this actually was not a modification matter because no primary residential parent was designated in the 2004 PPP, and therefore, the Trial Court did not need to find first any material change of circumstances. Husband, we note, takes this position for the first time on appeal. Nevertheless, this argument, while interesting, is unpersuasive. As Mother observes, under Tennessee law, the primary residential parent is the parent with whom the child resides more than fifty percent of the time. *See* Tenn. Code Ann. § 36-6-402(4) (2010). Here, Mother clearly was the primary residential parent of the Children under the 2004 PPP, as evidenced by the fact that the Children spent the majority of their time with her. Further, this case has been argued by both Mother and Father until this appeal as though it were based upon an attempted modification. Thus, we perceive this to be a modification matter, and the correct analysis to apply is that for modification of custody.

We now address whether a material change of circumstances occurred in this case that could justify changing the primary residential parent. Having carefully reviewed the evidence in the record, we find no such material change of circumstances in this case. The Children's preference testimony was on the whole rather inconclusive and not dispositive. Father's change in work hours hardly can be deemed an occurrence so meaningfully consequential to the Children's well-being as to warrant a change in primary residential parent. We observe that the Trial Court, in its order, stated that Mother had committed an outburst in court. While this act might be relevant to consider under a best interests analysis, we do not find that the outburst represents a material change of circumstances. We place much weight on continuity and stability in these matters. As Mother argues in her brief, "[t]here was simply no basis to disrupt the continuity of Julian's almost 11 years of placement with Mother and Tristen's 6 years with Mother." Indeed, the record indicates that the Children were doing well under the 2004 PPP.

In its ruling, the Trial Court also emphasized, as a material change of circumstances, Mother's move from her parents' home to a new residence with her husband. While certainly a change, it is not at all apparent from the record that this move has meaningfully impacted the Children's lives in such a way as to represent a material change of circumstances for purposes of our analysis. We recognize evidence in the record stating that Mother's parents assisted her in taking care of the Children. It does not necessarily follow from this fact, however, that Mother is incapable of raising the Children in a residence apart from her parents.

We find nothing in the record to justify so drastic a move as changing the primary residential parent. The evidence in the record simply preponderates against any finding that the change in Father's work schedule and Mother and her husband moving to a new home is a change that affects the Children's well-being in a meaningful way. It is, at this time with the record now before us, only speculation as to whether or not Mother's moving into her own home with her husband will or will not affect the Children in any meaningful way as there was no proof presented that it had, by the time of the trial, done so.

The evidence in the record on appeal preponderates against the Trial Court's finding that a material change of circumstances justified changing the primary residential parent from Mother to Father. As we find there was no material chance of circumstances, we forego any best interests analysis. We reverse the judgment of the Trial Court as to this issue.

We, however, are cognizant of Father's work schedule change and the benefit that could be gained by the Children were they to spend more time with him. We agree with Father that it would be in the Children's best interests for them to have more time with Father. Therefore, we remand this cause to the Trial Court for the adoption of a permanent parenting plan that suitably acknowledges Father's work schedule change and allows the Children to have more time with Father while retaining Mother as the primary residential parent.

We next address whether either party should be awarded attorney's fees for the proceedings below or on appeal. Under the facts of this case, we do not find it appropriate to award either party attorney's fees for the proceedings below. Also, in the exercise of our discretion in light of all relevant factors, we decline to award either party attorney's fees on appeal.

## **Conclusion**

The judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for further proceedings, including the adoption of a modified permanent parenting plan, consistent with this Opinion. Costs on appeal are assessed against the appellee, Nathan Leamon.

_____
D. MICHAEL SWINEY, JUDGE